# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **NPE ENTERPRISE LLC,** | ) | **CASE NO. 1:21-CV-00661** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **SAMEI PATAQ, et al,** | ) | **OPINION** |
| | ) | |
| **Defendants.** | ) | |

## CHRISTOPHER A. BOYKO, J.:

Before the Court are cross-motions for partial summary judgment filed by the parties. Plaintiff NPE Enterprises, LLC ("NPE") seeks summary judgment on Defendants Samei Pataq ("Pataq") and SP Car Wash Inc. (collectively "SP Parties") claims of Breach of Express and Implied Warranties, Defamation, Tortious Interference with Business Relationships and Violations of the Sherman Antitrust Act and Valentine Act counterclaims. (ECF # 29.) It also seeks summary judgment on Defendant's punitive damages claim. *Id.* Defendants filed a Response in Opposition (ECF #32) and Plaintiff filed a Reply in Support. (ECF #34.)

Defendants seeks summary judgment on Plaintiff's claims of Breach of Contract and Unjust Enrichment. (ECF # 31.) Defendants also seek partial summary judgment on the issue of liability on their Breach of Contract, Tortious Interference with Business Relationships and violations of the Sherman Antitrust Act and Valentine Act counterclaims. (*Id.*) Defendants expressly state their intention to reserve the issue of compensatory and punitive damages for

determination at trial.  (*Id.*)  Plaintiff filed a Response in Opposition (ECF #33) and Defendants filed a Reply in Support.  (ECF 35).

## PROCEDURAL HISTORY

On February 12, 2021, Plaintiff NPE Enterprises, LLC filed a Complaint in Ashland County, Ohio Court of Common Pleas asserting claims for Breach of Contract and Unjust Enrichment against Defendants Samei Pataq and SP Car Wash, Inc.  (ECF # 1-1.)  Although not expressly stated in the Complaint, the first and second causes of action are construed by the Court as plead in the alternative because under Ohio law, "one cannot recover under a theory of unjust enrichment when there is a contract governing the dispute."  *Mktg. Assocs., Inc. v. Fellowes, Inc.,* No. 1:05-cv-1518, 2006 U.S. Dist. LEXIS 12192, 2006 WL 721619, at *1 (N.D. Ohio Mar. 21, 2006) (citations omitted).

On March 24, 2021, Defendants removed the action to this Court on the basis of diversity jurisdiction.  (ECF # 1.)  Shortly thereafter, on April 14, 2021, the SP Parties filed an Answer to the Complaint and asserted counterclaims for Breach of Contract, Defamation, Tortious Interference with a Business Relationship, Breach of Express Warranty and Breach of Implied Warranties.  (ECF # 6.)

On November 30, 2021, Plaintiff filed a First Amended Complaint, which reasserted its claims for Breach of Contract and Unjust Enrichment.  (ECF # 19.)  On December 14, 2021, Defendants filed an Answer to Amended Complaint and Amended Counterclaim, which reasserted its counterclaims and added two antitrust Counts: Agreements Restraining Trade in Violation of Sherman Antitrust Act, 15 U.S.C. § 1, and Agreements Against Trade in Violation of the Valentine Act, Ohio Revised Code, § 1331.04.  (ECF # 21.)

## BACKGROUND FACTS

Defendant/Counterclaimant Pataq founded SP Car Wash Inc. ("SP Car Wash") for the purpose of constructing and operating a new car wash in the Detroit, Michigan area.  (ECF # 29-1, 12/7/2021 Dep. of Samei Pataq p. 8:5–10.)  Pataq was referred to Plaintiff NPE and its owner and CEO, Trent Walter, for a variety of car wash services.  (*Id.*, p. 13:3–6.).  Pataq contacted NPE to assist with site selection.  (*Id.*, 14:3–9.)  Satisfied with the site, Pataq purchased the property to serve as the location of his planned car wash.  (*Id.*, p. 14:7–20.)  Pataq subsequently received multiple proposals, including a proposal from NPE for installation of a tunnel wash system at SP Car Wash. (*Id.*, pp. 15:6–16:6.)  Pataq accepted and signed NPE's 4-page proposal, which forms the contract between the parties at the heart of this dispute.  (ECF # 29-3, the "Contract").

The Contract lists several major components, including (1) a 115' Sonny's Tunnel Equipment Package, (2) Motor City Equipment with subcomponents listing a "Dry-N-Shine" Top Wheel and Controls, and (3) a payment terminals/system from DRB Systems.  (*Id.*)  The contract also required plumbing, floor heat and boiler work (*Id.*), which NPE subcontracted to Carwash Boilers, Inc.  The Contract contains no written provisions for changes or alterations to the proposal (*Id.*), but there is undisputed evidence that the parties agreed to changes.  (ECF #29-2, 11/10/21 Trent Walter Dep., pp. 22:20—24:3.)

On December 3, 2020, NPE completed construction of the car wash and sent a final invoice to Pataq.  (*Id.* p. 52:13–17.)  On December 16, Mr. Walter went to SP Car Wash with several other NPE employees to perform a variety of repairs and adjustments requested by Pataq.  (*Id.*, pp. 38:18–39:5, 88:17–89:18; ECF # 29-1, Pataq Dep., 104:6–9.)  After the additional work was completed, Pataq indicated to an NPE representative that he would make the final payment of $80,000.  (ECF # 29-2, p. 89:15–23.)  However, Pataq subsequently told

his banker not to make the payment. (ECF # 29-1, pp. 104:17–105:3.) Because of the nonpayment, NPE suspended all services to Defendants. (ECF # 29-2, pp. 89:24–90:16.)

Pataq claims the SP Parties are entitled to a credit due to their dissatisfaction with NPE's performance under the Contract. (ECF # 29-1, pp. 39:13–40:21.) Specifically, Pataq complains NPE installed three dryer arches instead of four (ECF # 29-4, 4/19/22 Pataq Depo. p. 56:18-22), NPE did not provide the name brand "Hydra Flex" panels, but instead a generic system built by NPE (ECF # 29-1, pp. 42:3–24), NPE did not provide the Motor Control Center usually included in the Sonny's package, despite listing it as part of a "Sonny's" brand package on the Contract (ECF # 29-4, p. 94:7-9.), and NPE installed 8 LED light bars instead of the 9 LED lights the Contract required (ECF # 29-1, p. 36:16-18). Pataq further contends four more specific contract breaches because NPE installed a generic high pressure rinse arch instead of the "Sonny's" high pressure arch (*Id.*, p. 20:6-13); NPE did not use the proper hydraulic fluid (*Id.*, p. 33:19-25); NPE did not provide the required air dryers (*Id.*, p. 37:21-22); and (4) provided only 500 fast passes when the Contract required 1000. (*Id.*, p. 44:56).

After NPE suspended services to the SP Parties, Mr. Walter had discussions with various vendors who had provided equipment or services for SP Car Wash's tunnel system and told them that NPE would not be providing technical support to the SP Parties. (ECF #29-2, Walter Dep., p. 105:16– 22). These companies were (1) Sonny's, (2) Diamond Shine, (3) DRB, (4) Motor City Wash Works, and (5) Carwash Boilers. (ECF #29-4, 4/19/2022 Dep. of Samei Pataq, pp. 8:18–9:3.) Mr. Walter told these companies that NPE was owed money by the SP Parties and asked them not to provide services for SP Car Wash. Mr. Walter hoped that this would help encourage the SP Parties to pay NPE's outstanding invoices. (ECF #29-2, Walter Dep., pp. 105:16—108:17)

Pataq testified that he and his manager had to spend "endless" hours mending the relationship with these vendors.  (ECF #29-1, Pataq Dep., pp. 48:15—49:19.)  When pressed, Pataq did not provide a calculation of the damages relating to the time mending the relationships, deferring to an expert to make that calculation.  (*Id.* at p. 50:13-20.)

### LITIGATION CONDUCT

Relevant to this matter is not just the business conduct of the parties in the construction of the car wash and acts after the suspension of services, but also the SP Parties' conduct during the litigation.  In written discovery related to Counterclaims 2-7, the SP Parties provided the following categories of damages: lost profits/lost revenue (breach of express warranty, breach of implied warranty, defamation, tortious interference with business relationship, antitrust violations) (ECF # 29-7 at pp. 3-6), mental and emotional distress (defamation, tortious interference with business relationship) (*Id.* at pp. 4-5), as well as punitive and treble damages.  (*Id.*)  The written discovery does not provide a discrete computation of the damages sought, stating only that Defendants paid a manager "thousands of dollars for his time spent attempting to mend relationships" in response to interrogatories related to damages for defamation, tortious interference with business relationship and antitrust violations.  (*Id.*)

Pataq was deposed twice in this action, December 7, 2021 (See ECF # 29-1) and April 19, 2022.  (See ECF # 29-4.)  During the first deposition, Pataq was asked if he were in the process of preparing additional document production to evidence his damages, to which he responded, "potentially, yes." (ECF # 29-1 at 77:21-23.)  Pataq's counsel indicated at the conclusion of the first deposition that they were still considering whether they would be engaging an expert witness in the case and based on those decisions supplemental documents might be provided.  (*Id.* at 108:19-24.)

On or about May 16, 2022, the SP Parties' provided a damages expert report to Plaintiff.  (ECF #29-8 at ¶ 3.)  After production of the expert report, Pataq was deposed again. At the second deposition he was asked about damages computations.  Pataq stated he had not performed a damages calculation and if the case went to trial they would use an expert.  (ECF #29-4 at p. 10:13-19.)  He testified regarding damages related to suspension of services from Sonny's and Diamond Shine that "we can figure [the damages] out exactly." (*Id.* at p. 11:4-23.)  He never provided a damages calculation, however. (*Id.* at p. 12:10-15.)  Pataq stated he had not performed a damages calculation and would rely on expert testimony for damages related to Plaintiffs business interference with Motor City Wash Works.  (*Id.* at p. 26:8-17.) The testimony was the same for damages related to interference with Carwash Boilers.  (*Id.* at p. 34:14-21.)

Pataq testified that he was responsible for the responses to written discovery along with counsel.  (*Id.*, p. 44:21-24.)  He was specifically asked to elaborate on the "thousands of dollars spent to mend relationships" and he identified relationships with DRB, Diamond Shine, Sonny's, Motor City and Ohio Boilers.  (*Id.*. at 45:14—50:20.)  He testified "endless" hours were spent by his manager mending these relationships.  (*Id.*.)  When asked for a specific quantity he said he did not know and reiterated "endless." (*Id.*)  Pataq did not provide a calculation or a methodology for calculation and indicated an expert would provide the figure.  (*Id.*. at 50:13-20.)  Pataq described his emotional, psychological, financial and reputational damages as "endless" and that an expert would calculate those damages. (*Id.*. at 52:22—54:1.)

Plaintiff's counsel attempted to schedule an expert deposition six times, but received no response from SP Parties' counsel. (ECF # 29-8 at ¶¶ 3-9.)  On July 28, 2022, Plaintiff's

counsel contacted the Court via email with a copy to Defendants' counsel requesting assistance to resolve the scheduling issue. (*Id.* at ¶ 9.) That same day, Defendants' counsel emailed the Court and counsel and indicated they were withdrawing their expert and that the SP Parties "intend to rely on other forms of evidence in support of their claims for damages." (*Id.*. at ¶ 10, ECF #29-9.).

## STANDARD OF REVIEW

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Lansing Dairy. Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.,* 78 F.3d 1079, 1087 (6th Cir.

1996); *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404-06 (6th Cir. 1992).  The

burden falls upon the nonmoving party to "designate specific facts or evidence in dispute,"

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986); and if the nonmoving party fails to make the necessary showing on an element upon

which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*,

477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass 'n

v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-

52).

## LAW AND ANALYSIS

### NPE'S MOTION

Plaintiff NPE seeks summary judgment on the SP Parties' Counterclaims for Breach

of Express and Implied Warranties, Defamation, Tortious Interference with Business

Relationship and Violations of the Sherman Antitrust Act and Valentine Act on the basis that

Defendants' conduct during discovery requires a finding that Defendants may not supply

producable admissible evidence to support a finding of damages on those claims.

Plaintiff is also seeking judgment on substantive grounds.  Specifically, they contend

that Defendants' defamation claim must fail because the fact of Defendants nonpayment, the

alleged defaming statement, is true.  Plaintiff contends that Pataq's belief that he is owed a

credit does not alter the truth of his nonpayment.  Plaintiff also asserts that the alleged

anticompetitive behavior impacted a single entity, SP Car Wash, Inc., and therefore, is not the

kind of injury contemplated by antitrust laws.  Plaintiff also contends the record is devoid of

the "hatred, ill will, or spirit of revenge" necessary to support an award of punitive damages.

I. **Operation of Fed. R. Civ. P. 37 precludes the SP Parties from supplying evidence on a motion, at a hearing, or at a trial on the issue of damages related to their counterclaims for Breach of Express and Implied Warranties, Defamation, Tortious Interference with Business Relationship, and Violations of the Sherman Antitrust Act and Valentine Act.**

Each of Defendants counterclaims require proof of injury or harm.  *See, e.g., Rayco Mfg., Inc. v. Deutz Corp.,* 771 F. Supp. 2d 819, 823 (N.D. Ohio 2010), *aff'd,* 497 F. App'x 515 (6th Cir. 2012) (breach of express and implied warranties); *NOCO Co. v. OJ Com., LLC,* 35 F.4th 475, 482 n.2 (6th Cir. 2022) (defamation and tortious interference); *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 450 (6th Cir. 2007) (state and federal antitrust).

Defendants identified lost profits and reduced revenue as damages related to its claims for breach of express and implied warranties, defamation, tortious interference with business relationship and violations of the Sherman Antitrust Act and Valentine Act.  (ECF #29-7, Answer to Interrogatories 4-9.)  They also identified mental and emotional distress related to their defamation claim (*Id.*, Answer to Interrogatory No. 6) and thousands of dollars in manager time lost related to their claims for defamation, tortious interference with business relationship and violations of the Sherman Antitrust Act and Valentine Act.  (*Id.*, Answer to Interrogatories 6-9.)

Plaintiff seeks Rule 37 exclusion of damages evidence due to Defendants' litigation conduct in discovery.  Defendants counter that they "disclosed more than enough evidence by the end of discovery on April 29, 2022 to sustain their claims."  (ECF #32 at 3.)  Further, Defendants contend their failure to provide a discrete, calculable damages figure is substantially justified or harmless.  *Id.* at 4-6.

In discovery, a party must disclose "a computation of each category of damages claimed," as well as make available "the documents or other evidentiary material . . . on

which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii).  Further, a "party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process[.]"  *Id.* 26(e)(1)(A).  "If a party fails to provide information . . . as required by Rule 26(a) or (e), [then] the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *Id.* 37(c)(1).

The test for Rule 37(c) exclusion "is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357, 370 (6th Cir. 2010); see also *Acuity Brands Lighting, Inc. v. Bickley,* No. 5:13-CV-366-DLB-REW, 2015 U.S. Dist. LEXIS 177183, 2015 WL 10551946 (E.D. Ky. Nov. 30, 2015), adopted by 2016 U.S. Dist. LEXIS 38470, 2016 WL 1171541 (E.D. Ky. Mar. 24, 2016).  "Rule 37(c)(1) authorizes the trial court to exclude evidence that was withheld in violation of Rule 26(a) or (e).  The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'" *Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.,* 666 F. Supp. 2d 820, 826 (N.D. Ohio 2009).  "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.,* 388 F.3d 976, 983 (6th Cir. 2004).  Indeed, as the Sixth Circuit recently emphasized, "exclusion of late or undisclosed evidence is the usual remedy for

noncompliance with Rule 26(a) or (e)," although the Court of course retains alternative options.  *Howe v. City of Akron,* 801 F.3d 718, 747 (6th Cir. 2015).

The Sixth Circuit has adopted a five part test to assess whether a failure to disclose evidence is justified or harmless and thus not subject to automatic exclusion: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.  *Howe*, 801 F.3d at 748.  The Court will analyze these factors in order.

### A.     Allowing presentation of damages evidence for the first time at trial is plain surprise.

Defendants contend that Plaintiff had "all the information relevant to the computation of damages in its possession" with regard to the value of the name brand car wash components that were listed in the Contract, but substituted during construction.  Accordingly, Defendants contend there is no surprise regarding the amount of damages attributable to its warranty claims (Counts 2 & 3).  Further, Defendants maintain that damages for lost profits can be determined by "commonsensically applying the sales data to this two-hour period [lost due to downtime related to the parts.]"

The Court disagrees.  If calculation of the damages were commonsensically available, it defies explanation why Pataq would testify that an expert was required or why, despite repeated questioning, he was unable to provide a simple answer.  The Civil Rules, simply put, "do not require parties to read minds."  *Bentley v. Highlands Hosp. Corp.,* No. 15-97-ART-EBA, 2016 U.S. Dist. LEXIS 139414, at *31 (E.D. Ky. Oct. 6, 2016).  The Court is persuaded that *Antioch* provides proper guidance on this issue: "If calculating damages were as easy as simple arithmetic, and is based on the facts in the record, then Plaintiff's 30(b)(6) witness

11

should have answered questions about damages." *Antioch Co. Litig. Tr. v. Morgan,* No. 3:10-cv-156, 2014 U.S. Dist. LEXIS 47740, at *26 (S.D. Ohio Apr. 7, 2014) (citing *Bessemer*, 596 F.3d 357, 366-370 (6th Cir. 2010) (affirming district court's exclusion of damages related evidence based on plaintiff's failure to provide sufficient information in initial disclosures or during discovery)).

The Court finds permitting a precise damages calculation for the first time at trial would constitute plain surprise.

### B. Cross-examination is the wrong method to cure the surprise.

Defendants contend that because there is no surprise, there is no need to cure.  The Court disagrees.  Simply avoiding the issue is not sufficient.  The proposed cure for the failure of the Defendants to provide precise calculations of damages at this stage of the proceedings is cross-examination at trial – a conclusion further buttressed by Defendants' decision to seek summary judgment on liability only and to leave damages to trial.  The Court does not consider cross-examination at trial an appropriate remedy for a failure to disclose precise damages in discovery.  *See Moonbeam Capital Invs., LLC v. Integrated Constr. Sols., Inc.,* No. 2:18-cv-12606, 2020 U.S. Dist. LEXIS 54583, at *38 (E.D. Mich. Mar. 30, 2020). Accordingly, this factor weighs in Plaintiff's favor for the imposition of Rule 37 sanctions.

### C. Allowing presentation of damages evidence for the first time at trial would be disruptive.

Defendants contend there would be no disruption at trial.  Again, the Court disagrees. As noted above, cross-examination at trial is not an appropriate time for the discovery of the amount of liability Plaintiff may be facing.  Ambush at trial invites disruption.  *See EQT Prod. Co. v. Magnum Hunter Prod., Inc.,* No. 5:16-CV-150-JMH-REW, 2017 U.S. Dist. LEXIS 80288, at *16 (E.D. Ky. May 25, 2017) (revelation of actual damages during cross-

examination improperly forces a party to wait until trial to get answers to and explanations of critical questions to which it was entitled during discovery.)  Furthermore, this failure denies Plaintiff the opportunity to fully and fairly prepare for trial.

       **D.**       **The damages calculation is a critical fact.**

Defendants concede that evidence of reduced value and lost profits is "essential to making the SP Parties whole."  (ECF #32.)  Defendants' observation only serves to buttress Plaintiff's argument.  "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure."  *EQT Prod. Co.,* 2017 U.S. Dist. LEXIS 80288, at *17 (E.D. Ky. May 25, 2017).  The more important the evidence, the more non-disclosure militates for a finding that failure to disclose was not substantially justified or harmless.  *See In re Cox Motor Express of Greensboro, Inc.,* No. 14-10468, 2016 Bankr. LEXIS 3897, 2016 WL 6661318, at *5 (M.D.N.C. Nov. 4, 2016) ("[T]he [vital] importance of the evidence weighs in favor of finding that Defendant's failure to disclose was not substantially justified or harmless."); *Etheridge v. E.I. DuPont De Nemours & Co., Inc.,* No. 14-CV-2443-SHL-cgc, 2015 U.S. Dist. LEXIS 188910, 2015 WL 12516227, at *3 (W.D. Tenn. Oct. 14, 2015) ("[B]ecause this evidence is so important to Plaintiff, her explanation for her failure to abide by . . . the Federal Rules of Civil Procedure becomes even less satisfactory.")

       **E.**       **Defendants have failed to provide any cohesive explanation for its inconsistent discovery conduct and failure to disclose damages calculations.**

Defendants defend their non-disclosure of damages evidence with but one argument: "trying to ascertain the true value of the car wash is exceedingly difficult given the number of modifications made.  It is not entirely clear either party can recount the full list of on-the-fly alterations made."  (ECF #32.)  Accordingly, Defendants contend this is a case of lack of information rather than underhandedness.  *Id.*

13

Defendants' explanation fails to account for its actions with regard to its decision to withdraw its expert, or Pataq's continued sworn testimony that damages calculations will be left to the experts.  It fails to explain lack of testimony of "commonsense" lost profits damages.  The difficulty in determining the damages amount only highlights the fact that the subject might require an expert as conceded by Pataq at deposition, but ultimately abandoned. Defendants may not have their cake and eat it too.

The Court finds the balance of the factors weighs against the Defendants.  The SP Parties have failed to meet their burden to demonstrate that their failure to disclose discrete calculations of damages and related evidence was substantially justified or harmless. Accordingly, Fed. R. Civ. P. 37 requires exclusion of damages evidence at motion, hearing or at trial.

Because Defendants identified only lost profits as its measure of damages for its claims for breach of express and implied warranties and is precluded by Rule from presenting evidence of those damages at trial, Plaintiff is entitled to summary judgment on those claims. Plaintiff is also entitled to summary judgment on claims with damages related to mental and emotional distress as "endless" damages are neither discrete nor calculable.

## II.     Defendants reliance on the UCC to save its breach of express and implied warranties claims is misplaced.

Defendants argue that their Answer to Interrogatories No. 4 and 5 identify more than just lost profits damages.  (ECF #32.)  Defendants direct the Court to their statement that "[t]he wash that Plaintiff constructed failed to operate as warranted" to support that they are entitled to damages which amount to the difference in value between the contracted-for components of the car wash and the components that were actually installed.  *Id.*  The Court is not persuaded.

Defendants' interrogatory response refers to the "operation" of the car wash as a whole, i.e., it's efficiency.  This conclusion is further supported by Defendants' specific identification of parts that failed resulting in closures of the car wash.  Defendant goes on to state, "These defects contributed to Defendants losing profits …."  Accordingly, in context, the Answer to Interrogatories No. 4 and 5 specifically identify lost profits and does not put Plaintiff on notice that the breach of express and implied warranties claims seek damages related to the difference in value between the contracted-for components of the car wash and the components that were actually installed.

Plaintiff is entitled to summary judgment on those claims.

**III.    Defendants cannot demonstrate an antitrust injury.**

Plaintiff argues it is entitled to summary judgment on Defendants' claims of violations of the Sherman Antitrust Act and Valentine Act – federal and state antitrust claims – because Defendants cannot demonstrate the type of injury that antitrust laws were intended to prevent and cannot demonstrate any anticompetitive effect to a relevant market.  Defendant counters that it has provided evidence of disputed facts such that summary judgment would be improper.

Defendants argue this is a straightforward "refusal to deal" claim.  (ECF #32.)  They cite evidence that at least one distributor has refused to sell a Dry-N-Shine machine to the SP Parties due to Mr. Walter's interference.  They further state that the crux of the claim "lies in the increased expense they had to incur due to reduced competition for carwash parts."  *Id.*

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  Although the

Sherman Act, by its terms, prohibits every agreement "in restraint of trade," the United States

Supreme Court recognizes that Congress intended to outlaw only "unreasonable restraints."

*State Oil Co. v. Khan,* 522 U.S. 3, 10, 118 S. Ct. 275, 139 L. Ed. 2d 199 (1997).

> [T]o establish a claim under Section 1, the plaintiff must establish that the
> defendants contracted, combined or conspired among each other, that the
> combination or conspiracy produced adverse, anticompetitive effects within
> relevant product and geographic markets, that the objects of any conduct
> pursuant to that contract or conspiracy were illegal and that the plaintiff was
> injured as a proximate result of that conspiracy.

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988).

Antitrust injury is an essential element of every antitrust claim and the counterclaim

plaintiff bears the burden of proof on that threshold requirement.  *Atl. Richfield Co. v. USA*

*Petroleum Co.,* 495 U.S. 328, 335, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990).

> It is not enough to simply allege that an individual competitor suffered adverse
> effects from the contract or conspiracy.  Rather, "[a]ntitrust injury is (1) injury
> of the type the antitrust laws were intended to prevent and (2) injury that flows
> from that which makes the defendants acts unlawful."...  "It ensures that the
> injury should reflect the anticompetitive effect" of the defendant's actions.  This
> "ensures that plaintiff can recover only if the loss stems from a competition-
> reducing aspect or effect of the defendant's behavior."

*Food Lion, LLC v. Dean Foods Co. (In re Se. Milk Antitrust Litig.),* 739 F.3d 262, 284 (6th

Cir. 2014) (citations omitted).

Quite simply, Defendants' cannot meet this burden.  They have not presented any

evidence of competition-reducing aspects or effects of Plaintiff's sharp business practices

intended to force Defendants to make the final payment.  By their own statement, the crux of

Defendants' claim is the vertical restraint on trade resulting in increased expense to

Defendants.  Injury to a single competitor in the marketplace does not establish a cognizable

antitrust injury.  *Wee Care Child Ctr., Inc. v. Lumpkin,* 680 F.3d 841, 848 (6th Cir. 2012)

("adverse effects suffered by an individual competitor cannot establish an antitrust injury");

see also *Indeck Energy Servs., Inc. v. Consumers Energy Co.,* 250 F.3d 972, 977 (6th Cir. 2000) (affirming dismissal when "the only harm allegedly suffered by [the plaintiff] was in the company's capacity as a competitor in the marketplace, not as a defender of marketplace competition").

Because Defendants cannot demonstrate a violation of the Sherman Act, it follows that they cannot demonstrate a violation of the Valentine Act. *See Nilavar v. Mercy Health Sys. W. Ohio,* 494 F. Supp. 2d 604, 621 (S.D. Ohio 2005) (granting summary judgment to the defendants on a Valentine Act claim based on a grant of summary judgment to the defendants on a Sherman Act claim); *Richter Concrete Corp. v. Hilltop Basic Res., Inc.,* 547 F. Supp. 893, 920 (S.D. Ohio 1981) (finding that a failure to prove claims under the Sherman Act constitutes a failure to prove the claim under the Valentine Act).

Plaintiff is entitled to summary judgment on Defendants' antitrust claims.

## IV.     Defendants cannot demonstrate a false statement was made.

Defendants have asserted a defamation claim against Plaintiff, arguing that Mr. Walter's statements to Defendants' suppliers about Defendants' nonpayment to Plaintiff were false due to omission of the explanation for the non-payment. Plaintiff contends the statements made to Defendants' equipment manufacturers and suppliers was "substantially true" such that is provides an absolute defense to the defamation claim. Defendant argues that whether the statement was "substantially true" is a jury issue and thus, their claim must survive summary judgment.

A plaintiff must prove falsity as an essential element of a defamation claim and because falsity is an essential element, a true statement cannot provide the basis for such an action. *Natl. Medic Servs. Corp. v. E. W. Scripps Co.,* 61 Ohio App.3d 752, 755, 573 N.E.2d

1148 (1st Dist.1989).  Therefore, "[i]n Ohio, truth is a complete defense to a claim for defamation." *Montgomery v. Greater Cleveland Regional Transit Auth.,* 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 30, citing *Ed Schory & Sons v. Francis,* 75 Ohio St.3d 433, 445, 1996-Ohio-194, 662 N.E.2d 1074.  "'It is sufficient [in defending against a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the "gist," the "sting," or the substantial truth of the defamation.'"  *Krems v. University Hosps. of Cleveland,* 133 Ohio App. 3d 6, 9, 726 N.E.2d 1016 (8th Dist.1999), quoting Prosser, The Law of Torts, 798-799 (4th Ed. 1971).  "Whether a defamatory statement is substantially true is a question of fact and summary judgment may only be granted if no genuine issue of material fact exists after the submission of evidence pursuant to Civ.R. 56."  *Hartman v. Kerch,* 2023-Ohio-1972, ¶ 37, 217 N.E.3d 881, 896-97 (Ct. App.) (citations omitted).

The Court finds that there is no genuine issue of material fact that precludes summary judgment for Plaintiff on Defendants' defamation claim.  Pataq admits that he had not paid the final invoices (ECF #29-1, Pataq Dep. at 39:13-40:21).

Ohio courts "ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact.  A statement is not a 'false statement' if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it."  *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n,* 158 Ohio App. 3d 769, 2004 Ohio 5662, 822 N.E.2d 424, 430 (Ohio App. 2004) (internal citations omitted).

There is no dispute of material fact that Pataq did not pay the final invoice.  Nor is there any dispute of material fact that Walter communicated the fact of nonpayment to several manufactures and vendors to influence them to become part of a pressure campaign to induce

18

Defendants to make the final payments. The fact that Walter did not disclose all the relevant facts, specifically Pataq's reason for not paying the final invoices, does not transform the truth of nonpayment into a false statement sufficient to support a claim of defamation.

Plaintiff is entitled to summary judgment on Defendants' defamation claim.

### V.    Defendants are not entitled to punitive damages.

Defendants' only remaining claim is the disputed Breach of Contract claim. The Supreme Court of Ohio has made clear that punitive damages are not available for breach of contract absent a harm distinct from the breach of contract attributable solely to the alleged tortious conduct. *Lucarell v. Nationwide Mut. Ins. Co.,* 2018-Ohio-15, ¶¶ 35-37, 152 Ohio St. 3d 453, 462, 97 N.E.3d 458, 467-68 (internal citations omitted.)

Because Plaintiff is entitled to summary judgment on Defendants' claims for conduct outside the Contract, Defendants cannot maintain a claim for punitive damages.

**SP PARTIES' MOTION**

Defendants are seeking summary judgment on NPE's claims of breach of contract and unjust enrichment. Defendants argue that NPE's failure to deliver name brand parts and specifically enumerated components constitutes a contractual breach that precludes its contract claim and that a claim for unjust enrichment cannot lie when there is an express contract. Specifically, Defendants direct the Court to NPE's installation of three drying arches instead of four and failing to provide a $40,000 motor control center. (ECF #31.)

NPE counters that it substantially performed the requirements of the contract because field adjustments were needed which were discussed with Pataq related to the dryer arches and other components. (ECF #33.) NPE contends it delivered what was required under the Contract – a fully functioning car wash and that the changes were done with the knowledge of Pataq. *Id.* At worst, NPE contends the deviations are a question for the jury. *Id.*

The SP parties reply that there is an open question as to whether this transaction falls under the Ohio Uniform Commercial Code rather than the common law of contract to the extent that selection of a particular brand of goods may be as significant as the decision to deliver or install those goods.  (ECF #35.)  Defendants further argue that application of the Uniform Commercial Code precludes application of the doctrine of substantial performance, such that it retains the right to reject the whole delivery, citing O.R.C. § 1302.60.  *Id.* Regardless of whether it is governed by the UCC or common law, the SP Parties maintain the Contract's emphasis on high-quality components reflects that substitution of "lesser" products represents a material breach of the Contract.  *Id.*  They further argue that NPE misconstrues the law and that substantial performance is a de facto concession of breach.  *Id.*

Defendants are also seeking summary judgment on liability only regarding their claims for Breach of Contract, Tortious Interference with Business Relationships and Violations of state and federal antitrust law.  (ECF #31.)  As noted above, they contend the failure to provide enumerated and specific components represent a material breach of the contract.  They also contend that Walter's freeze-out efforts with other vendors and service providers to compel the final payments demonstrate the necessary requirements to establish liability on Tortious Interference with Business Relationships and violations of state and federal antitrust law.  *Id.*  They argue that should the Court find NPE liable on these claims the matter should proceed to trial for a determination of compensatory and punitive damages. *Id.*

NPE counters that the SP Parties failure to provide any damages computations and withdrawal of their damages experts precludes presentation of damages evidence at motion or at trial, precluding judgment regardless of any potential liability.  (ECF #33.)  This line of

argument is the main thrust of their own Motion for Summary Judgment, discussed above. They also contend that the freeze-out efforts did not result in any damage, or, at best, a freeze out of no more than a few days.  *Id.*  They add that NPE's motive – resolving the payment dispute – does not rise to the level of tortious interference with business relationship.  *Id.* Last, NPE contends that any injury is personal to the car wash and not to the car wash industry, i.e., the SP Parties cannot maintain their antitrust claims because there is no antitrust injury to the relevant market.  *Id.*

The SP Parties reply that NPE's motive is immaterial to the fact that its intention was to interfere in the SP Parties business to strong arm them into payment and, thus, motive does not relieve them of liability.  They add that the record is replete with evidence of anticompetitive effects, specifically NPE's attempt to put the car wash "out of business."

## I.  In the absence of contrary authority, the Court assumes the doctrine of substantial performance applies under the UCC as under common law.

The Northern District of Ohio recently addressed the issue of whether the doctrine of substantial performance applies in Ohio to UCC contracts in *Lorad, LLC v. Azteca Milling L.P.,* No. 1:20-cv-00357, 2023 U.S. Dist. LEXIS 70406, at *50-5, 2023 WL 3043607, at *20-2 (N.D. Ohio Apr. 21, 2023).  The *Lorad* court conducted a thorough analysis of Ohio law and found that there was a "dearth of case law squarely addressing the issue."  *Id.* at *20.  It further found that state courts outside of Ohio were split on the issue of whether substantial performance applied to UCC contracts.  *Id.* at *21.  The *Lorad* court assumed arguendo that the doctrine applied.  *Id.*

The parties have provided no authority on whether the doctrine of substantial performance applies to UCC contracts in Ohio other than Defendants bald assertion that under the UCC "substantial performance would not apply."  (ECF #35 at 3.)  This Court rejects

Defendants' assertion and assumes that the substantial performance doctrine applies to UCC

contracts in Ohio. *Accord Kettering Adventist Healthcare v. Jade Designs,* LLC, 677 F.

Supp. 3d 735, 746 (S.D. Ohio 2023).

II.     **There are questions of material fact whether the deviations from the contract were approved and whether, if unapproved, the deviations destroyed the value or purpose of the contract.**

Defendants argue NPE may not maintain its breach of contract claim because it first

breached the Contract. (ECF #31.) Specifically, they argue that because NPE admits it did

not provide the specific equipment outlined in the Contract, it did not substantially perform its

obligations and is precluded by law from pursuing its breach of contract claim. *Id.* NPE

argues its delivery of a functioning car wash is substantial performance which preserves its

claim.

"The application of the substantial performance doctrine only applies 'where the party

has made an honest good faith effort to perform the terms of the contract' and 'the part

unperformed must not destroy the value or purpose of the contract.' Generally, '[w]hether a

party has substantially performed under the contract is a question of fact.' When, however,

the facts are undisputed, 'whether they constitute a performance or a breach of a written

contract, is a question of law for the court.'" *84 Lumber Co., LP v. Thompson Thrift Constr.,*

*Inc.,* No. 2:15-cv-1052, 2018 U.S. Dist. LEXIS 45048, at *31 (S.D. Ohio Mar. 20, 2018)

(citations omitted).

There is no dispute of material fact that there were deviations from the Contract

specifications. In fact, the record contains testimony by NPE representatives that some, if not

all, of the change orders were discussed and approved by Pataq. Specifically, Walter testified

that Pataq was aware of the necessity to install three arches instead of four and only

complained after the fact. (ECF #29-2, Walter Dep. pp. 40:21—41:25.) Walter testified that

the changes in the Hydra-Flex panels were a function of negotiation over price.  (*Id.* at p.31:7-12.)  There is also testimony that Pataq knew he was receiving a motor control center from OEC, not Sonny's.  (*Id.* pp. 52:21—53:14.)  Walter testified that there were multiple changes throughout the project with some in writing, some made verbally over the phone and some made verbally in person.  (*Id.* p. 20:7—25.)  However, he also testified that he could not identify all the changes that were made to the Contract.  (*Id.* at p. 21:10-14.)

The Contract dispute concerns whether the deviations "destroyed the value or purpose of the contract."  The SP Parties contend that Pataq was seeking to construct the "Mercedes-Benz" of carwashes.  (ECF #29-1, Pataq Dep. p. 32:9-12.)  But the record also reflects he wanted his Mercedes-Benz at a discount (ECF #29-2, Walter Dep. pp. 21:17-22:8) and to get that discount he was willing to deviate from the Contract via change orders.  Accordingly, the Court finds that there is a dispute of material fact whether the complained of deviations were authorized and known, and whether the changes, if unauthorized, destroyed the value or purpose of the contract such that the doctrine of substantial performance would not apply to preserve NPE's breach of contract claim.

### III.    Summary judgment is appropriate for the SP Parties on NPE's claim for unjust enrichment.

The SP Parties move for judgment on NPE's Unjust Enrichment claim because a cause of action for unjust enrichment cannot lie in the face of an express contract.  Neither side denies the existence of a contract and both sides have asserted breach of contract claims.  When the subject matter of a claim is governed by a contract, a claim for unjust enrichment on the same subject matter cannot lie.  See *Borden v. Antonelli Coll.,* 304 F. Supp. 3d 669, 678 (S.D. Ohio 2018) citing *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.,* 796 F.Supp. 1078, 1086 (S.D. Ohio 1992) ("In Ohio, [unjust enrichment] claims cannot be brought where the

subject matter of the claim[ ] is governed by a contract between the parties") (Kinneary, J.); *Retirement Ctrs. of Am. v. St. Leonard Ctr.,* Case No. C-3-90-343, 1992 U.S. Dist. LEXIS 22744, at **33-34, 1992 WL 1258517, at *9 (S.D. Ohio July 8, 1992) ("one may not recover for unjust enrichment where an express contract between the parties covers the same subject as the claim of unjust enrichment").

Because the Court finds on the evidence and arguments before it that the Contract governs the subject matter of the parties' construction dispute, NPE's Unjust Enrichment claim fails and the SP Parties are entitled to summary judgment on NPE's unjust enrichment claim.

### IV.     There are questions of material fact that preclude summary judgement on Defendant's claim of breach of contract.

A breach of contract occurs when (1) there is a binding contract, (2) one party performs, (3) the other party breaches, and (4) the nonbreaching party suffers damages from the breach. *Integrated Design Eng'g & Analysis Servs. v. Giddy Holdings, Inc.,* No. 5:20-cv-00563, 2021 U.S. Dist. LEXIS 41648, at *6 (N.D. Ohio Mar. 5, 2021) (citing *Carbone v. Nueva Constr. Grp., L.L.C.*, 2017- Ohio 382, 83 N.E.3d 375, 380 (Ohio Ct. App. 2017) and *Becker v. Direct Energy, LP*, 2018- Ohio 4134, 112 N.E.3d 978, 988 (Ohio Ct. App. 2018)).

Defendant argues that it is entitled to summary judgment because NPE materially breached the Contract.  Defendant also argues that NPE's arguments for application of the doctrine of substantial performance is a de facto admission of liability.  The Court does not agree.

"[A] material breach of contract is a party's failure to perform an element of the contract that is so fundamental to the contract that the single failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform."

*Creative Concrete v. D & G Pools,* 2008 Ohio 3338, 2008 WL 2609504, at *3 (Ohio Ct. App. June 26, 2008).  "The determination whether a material breach of an agreement has occurred is generally a question of fact."  *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio,* 437 F. Supp. 2d 706, 731 (S.D. Ohio 2006) (citing *Kersh v. Montgomery Developmental Ctr.,* 35 Ohio App. 3d 61, 519 N.E.2d 665, 668 (Ohio Ct. App. 1987)).

The Court has already found that there is a dispute of material fact regarding whether the deviations from the Contract were known and authorized by Pataq.  Accordingly, it is a matter for the jury to determine if there has been a material breach of the Contract.

Defendants' reliance on *Kersh v. Montgomery Developmental Ctr.,* 519 N.E.2d 665, 668–69, 35 Ohio App. 3d 61 (Ohio Ct. App. 1987) and *Perkins v. Petrilli,* No. 21 MA 0089, 2022 Ohio App. LEXIS 1906, ¶¶ 31–32 (Ohio Ct. App. June 15, 2022) for the proposition that arguing substantial performance is a de facto admission of liability is overstated.  Ohio law holds "[a]s a general rule, a party does not breach a contract when the party substantially performs the terms of the contract."  *Integrated Design Eng'g & Analysis Servs.,* at *6 (N.D. Ohio Mar. 5, 2021) (citing *Whitt Sturtevant, LLP v. NC Plaza LLC,* 2015- Ohio 3976, 43 N.E.3d 19, 30 (Ohio Ct. App. 2015)).

"The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract.  Merely nominal, trifling, or technical departures are not sufficient to breach the contract."  *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.,* (2008) 2008-Ohio-148, ¶ 24, 177 Ohio App. 3d 7, 18-19, 893 N.E.2d 855, 863 quoting *Ohio Farmers' Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph two of the syllabus.  "A court should confine the application of the doctrine of substantial performance to cases where the party has made an honest or good faith effort to

perform the terms of the contract." *Burlington Resources Oil & Gas Co. v. Cox* (1999), 133
Ohio App.3d 543, 548, 729 N.E.2d 398, citing *Ashley v. Henahan* (1897), 56 Ohio St. 559, 47
N.E. 573, paragraph one of the syllabus. "For the doctrine of substantial performance to
apply, the part unperformed must not destroy the value or purpose of the contract." *Hansel v.
Creative Concrete & Masonry Constr. Co.,* 148 Ohio App.3d 53, 2002-Ohio-198, 772 N.E.2d
138, at ¶ 12.

As the Court previously noted, there are questions of material fact whether the
deviations from the Contract were known and approved by Pataq. Further, whether those
deviations were nominal, trifling or technical departures from the Contract are left to the jury.
*See, e.g., Ashley v. Henahan*, 56 Ohio St. 559, 47 N.E. 573, 575-76 (Ohio 1897); *Lawless v.
Board of Education of Lawrence Cnty. Educational Service Center,* 2020- Ohio 117, 141
N.E.3d 267, 286 (Ohio Ct. App. 2020) (Determinations regarding substantial performance
present questions of fact generally left to a jury.)

CONCLUSION

By operation of Fed. R. Civ. P. 37, Defendants may not present damages evidence
related to lost profits or mental and emotional distress. Accordingly, Plaintiff is entitled to
summary judgment on Defendants' counterclaims for Breach of Express and Implied
Warranties, Defamation, Tortious Interference with Business Relationships and Violations of
the Sherman Antitrust Act and Valentine Act. Plaintiff is also entitled to summary judgment
on Violations of the Sherman Antitrust Act and Valentine Act because Defendants cannot
demonstrate an antitrust injury. Plaintiff is further entitled to summary judgment on
Defendants Defamation claim because Defendants cannot demonstrate that a false statement
was made. Finally, Plaintiff is entitled to summary judgment against Defendants on

26

Defendants' claim for punitive damages because punitive damages cannot lie solely for a claim of breach of contract.

Defendants are not entitled to summary judgment on their claim of breach of contract as there is a genuine dispute of material fact whether the deviations from the Contract were known and authorized by Pataq and whether the deviations, if unknown, were material. Defendant is entitled to summary judgment on Plaintiff's claim for unjust enrichment because the subject matter of the dispute is governed by contract.

Plaintiff NPE's Motion for Summary Judgment on Counts 2-7 of the SP Parties' Amended Counterclaim and on Claims for Punitive Damages is **GRANTED**.

Defendants are entitled to summary judgment on Plaintiff NPE's claim for unjust enrichment because the subject matter of the dispute is governed by contract.  The remainder of their motion is denied.  Defendants Partial Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

      /s  Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: September 30, 2024**